02-11-266-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00266-CV

 

 


 
 
 David Lee Carpenter, Jr.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Sharon K. Carpenter, aka Sharon Kimberly Weise
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM County
Court at Law No. 3 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Appellant
David Lee Carpenter, Jr. (David) filed suit against his stepmother Appellee
Sharon K. Carpenter, also known as Sharon Kimberly Weise, (Sharon) on August
19, 2010, asserting claims of destruction of personal property and conversion
of personal property.  Through amended petitions, David added claims for fraud
and for “concealment.”

In
his second amended petition, David alleged that until the October 30, 2007 death
of his father, he lived with his father and Sharon at their home in Arlington,
Texas.  David alleged that when he moved out, he left behind personal property
at the residence, “including but not limited to his clothing, a diamond
engagement ring, financial records, pictures, computer equipment, radio equipment,
speakers[,] and vehicle parts.”  Some of the property, such as the ring, had
been left in a locked filing cabinet in his locked bedroom.  David alleged that
he did not return to the residence to retrieve his property because, “based on
an irate phone call [with Sharon] on or about December 7, 2007,” David believed
that Sharon would try to have him arrested if he tried to enter the residence.

David
further alleged that Sharon authorized David to retrieve his property on
September 13, 2008, and that on that date, he went to the residence with his
attorney.  Once there, he was not allowed into the house or garage; Sharon had
left David’s property outside.  David alleged that the diamond engagement ring
was not included with the property that had been left outside.  David also
claimed that some of his property had been destroyed from Sharon’s “leaving his
emptied file cabinet, clothing, and all other personal property outside for
over [eight] months” and that Sharon “scratched or destroyed all other personal
property.”  Regarding his conversion claim, David alleged that Sharon converted
the engagement ring and “other personal property,” including parts for his
motorcycle, pictures, tools, personal gift cards, and financial records.

Under
his fraud claim, David asserted that Sharon knew that she had the engagement
ring and other personal property of his but that she denied having it.  David
asserted that Sharon “defrauded [him] by asserting the ring and other personal
property . . . was or could have been taken by unknown third parties when in
fact [she] had the ring and other personal property in her possession, custody[,]
and control at all times.”

As
to his “concealment” claim, David asserted that Sharon concealed his property,
that she made material misrepresentations as to the location and condition of
his property, and that he relied on her representations that he would be able
to pick up all of his property on September 13, 2008.  He also asserted that
Sharon’s husband told him that the ring had been placed in a safe deposit box
at some point to keep David from being able to recover it.

Sharon
filed an answer that included a general denial and asserted the affirmative
defense of limitations.  Sharon also filed a motion for summary judgment
asserting that David’s claims were barred by civil practice and remedies code
section 16.003, which provides a two year statute of limitations for “trespass
for injury . . . to the property of another, conversion of personal property,
[and] taking or detaining the personal property of another.”  Sharon alleged
that on February 7, 2008, David’s attorney sent a letter to Sharon, making a
formal demand for the return of David’s property.  She attached a copy of the
demand letter to her motion.

David
filed a response in which he asserted that the discovery rule applied because
his causes of action were not discoverable until September 13, 2008.  He stated
that until that date, he believed his personal property was safely stored in
his locked bedroom and that Sharon had prevented him from retrieving his
property before that time.

Sharon
filed a supplemental motion for summary judgment asserting that David’s fraud
claim was nothing more than a relabeled claim for conversion and destruction;
that “concealment” is a defensive doctrine rather than a cause of action; and
that the discovery rule did not apply.  The trial court granted summary
judgment for Sharon, and David filed this appeal.

In
David’s first issue, he argues generally that the trial court erred by granting
Sharon’s motion for summary judgment.  In David’s second issue, he argues that
the trial court erred by granting Sharon’s motion for summary judgment based on
the statute of limitations.  In David’s third issue, he asserts that the trial
court erred by granting summary judgment because the discovery rule applied to his
claim.  David argues these three issues together, and, accordingly, we consider
them together.

The
gist of David’s argument is (1) that until September 13, 2008, David believed
and had good reason to believe that his property was safe from destruction or
conversion because the property was locked in his bedroom at the residence in a
locked filing cabinet and (2) that September 13, 2008, was the first date he
knew or could have known of the destruction or conversion of his property
because he had not been allowed onto the premises to retrieve his property
until that date.  Accordingly, David argues, the discovery rule applies, and
the statute of limitations does not bar his claims.

With
respect to the property that David alleged was never returned to him, he
asserted a claim for conversion.  We address this claim first.  Statutes of
limitations begin to run (and the cause of action accrues) “when facts come
into existence that authorize a claimant to seek a judicial remedy,”[2]
or, put another way, “when a wrongful act causes some legal injury, even if the
fact of injury is not discovered until later, and even if all resulting damages
have not yet occurred.”[3]  Accordingly, David’s
cause of action accrued (and limitations began to run) at the time of Sharon’s
conversion.[4]

To
establish conversion . . ., a plaintiff must prove that

(1) [the plaintiff] owned or had legal possession of the
property or entitlement to possession; (2) the defendant unlawfully and without
authorization assumed and exercised dominion and control over the property to
the exclusion of, or inconsistent with the plaintiff’s rights as an owner; (3)
the plaintiff demanded return of the property; and (4) the defendant refused to
return the property.[5]

Demand
and refusal are not required when the possession was acquired wrongfully, after
the conversion has become complete, or when it is shown that a demand would
have been useless.[6]  Thus, generally, a
conversion claim accrues (and thus limitations begins to run) at the time of
the unlawful taking, or, if the taking is not originally unlawful, when “the
return of the property has been demanded and refused, or [when] the person in
possession has unequivocally exercised acts of domination over the property
inconsistent with the claims of the owner or the person entitled to possession.”[7] 
In this case, then, the statute of limitations began to run on David’s
conversion claim when Sharon unlawfully assumed control over David’s property
to the exclusion of David’s rights as owner, unless Sharon’s assumption of
control was not unlawful, in which case limitations began running when David demanded
return of the property and Sharon refused to return the property or when Sharon
otherwise unequivocally exercised control over the property inconsistent with
David’s claims.

Sharon
pointed out in her summary judgment motion that on February 7, 2008, David’s
attorney sent Sharon a letter stating that David “has been denied access to get
his personal belongings and mail from the residence” and that David “demands
immediately his personal belongings.”  This letter established that as of
February 7, 2008, Sharon was asserting control over David’s property and that
she had denied David access to retrieve it.  The wording of the letter necessarily
implies that David had already at least requested that his property be returned
to him and been refused; if he had not previously formally demanded the return
of his property, he demanded it as of that date.

David’s
summary judgment response also included his attorney’s affidavit in which he
stated that he sent a demand to Sharon on February 7, 2008, and never received
a response.  David also included his own affidavit in which he stated that he
spoke to Sharon on December 8, 2007, and as of a few days after that, she
“refused to allow me to pick up any of my personal property from that point
on.”  In his supplemental response, David attached the affidavit of his stepuncle
in which his stepuncle stated that on December 10, 2007, David asked him to ask
Sharon if David could pick up his belongings, that Sharon replied that David
could not come to the house for any reason, and that he told this to David.  Thus,
David’s own evidence shows that even before February 2008, Sharon had both unequivocally
exercised control over David’s property inconsistent with his claims to it and
refused David’s demand for its return.  From the evidence produced with the
summary judgment motion and responses, the trial court did not err by
concluding that David’s conversion claim began to run as early as December 2007
and at the latest in February 2008.

David
argues, however, that the trial court should have applied the discovery rule.  Regarding
the discovery rule, this court has noted that

[t]he discovery rule defers the accrual of a cause of
action until the plaintiff knows, or by exercising reasonable diligence, should
know of the facts giving rise to the claim.  For the discovery rule to apply,
the injury must be inherently undiscoverable and objectively verifiable.  An
injury is inherently undiscoverable if it is the type of injury that is not
generally discoverable by the exercise of reasonable diligence.[8]

David
makes no argument on appeal about why Sharon’s conversion was inherently
undiscoverable.  In fact, it was discoverable; David was aware at least as
early as February 7, 2008, that Sharon had assumed control of his property and
was refusing to return it.  He demanded the immediate return of his property,
but Sharon did not comply.  That David may not have known that the property
would never be returned to him is irrelevant; the conversion occurred
when Sharon unequivocally exercised control over David’s property inconsistent
with his claims to it or refused David’s demand for its return, which, as we have
held, occurred no later than in February 2008.  Accordingly, David failed to
establish that the discovery rule deferred the start of the limitations period on
his conversion claim.  We overrule David’s first, second, and third issues as
to his conversion claim.

For
David’s property that was returned to him but in a damaged or destroyed state,
David asserted a claim for destruction of property rather than conversion, and
we now address that claim.  Destruction of personal property may constitute a
conversion of the property,[9] and thus David could have
asserted a claim for conversion of this property.  But destruction of property
may also constitute a trespass.[10]  David does not label
his claim as either conversion or trespass to chattel, calling it simply “destruction
of property.”  To the extent that David’s claim regarding his
returned-but-destroyed property was intended to be a conversion claim, we have
already held that the trial court did not err by granting summary judgment on
that claim.

But
David could also have intended to assert a claim for trespass to personal
property.[11]  Like conversion, the
tort of trespass protects against interference with one’s possessory interest
in personal property.[12]  If Sharon intentionally
interfered with David’s right to possession of his personal property, she
committed trespass.

In a
trespass to personal property claim, however, the claimant is not necessarily
entitled to damages—only when the wrongful detention deprives the owner of its
use for a substantial period of time or is accompanied by actual damage to the
property will the owner be entitled to damages for the trespass.[13] 
Here, David asserted that his property was destroyed, and accordingly, Sharon
would have been liable for damages if David proved his trespass claim at trial. 
Based on our reading of David’s pleadings, he sufficiently pled not only a
claim for damages based on conversion, but also a claim for damages based on trespass. 
We must therefore consider whether the trial court erred by granting summary
judgment based on limitations on David’s trespass claim.

The
trespass occurred at the time of Sharon’s wrongful detention of David’s
property.[14]  The cause of action
accrued at that time, and therefore the limitations period began to run at that
time.  Because, as Sharon asserted in her summary judgment motion, the statute
of limitations for trespass to property claims is two years, limitations had
run on David’s trespass claim by the time he filed suit, unless it was tolled
by the discovery rule.  But even if David did not yet know that his property
had been damaged while in Sharon’s possession, he knew of her wrongful
detention of his property no later than February 2008.  Accordingly, the
discovery rule does not apply, and the trial court did not err by granting
summary judgment on  the basis that David’s trespass claim is time-barred.[15] 
We overrule the remainder of David’s first, second, and third issues.

In
David’s fourth and final issue, he argues that the trial court erred by
granting summary judgment on his fraud and fraudulent concealment claims because
fraud has a four year statute of limitations.  David’s main argument under this
issue is essentially a response to Sharon’s argument in the trial court that
his fraud and fraudulent concealment claims are nothing more than relabeled
claims for conversion and destruction.  David argues that “fraud, fraudulent
concealment[,] and conversion all have separate and distinct essential elements
to their causes of action.”  David then sets out the elements of fraud,
fraudulent concealment, and conversion and points out that they have different
elements.  He also points out that fraud has a four-year statute of limitations
and that courts have applied the discovery rule to fraud claims.

We
agree with David that fraud, conversion, and trespass have different elements. 
But David fails to address Sharon’s argument in her supplemental summary
judgment motion that in this case, looking to the substance of David’s claims, he
did not plead a fraud claim and only repled his conversion and destruction of
property claims, calling it fraud in order to avoid the statute of limitations.
 Regarding fraud, David makes no argument for why the trial court erred by
granting summary judgment on his fraud claim other than noting that the torts
of fraud and conversion have different elements.  And we note that in his
pleading of his fraud claim, David alleged that Sharon had possession of his
engagement ring and other personal property but denied having possession and
refused to make the property available to him, with the intent to deprive David
of his property.  We agree with Sharon that, looking to the substance of his
claim, David essentially repled his conversion claim as a fraud claim.[16] 
We therefore overrule the part of David’s fourth issue regarding his fraud
claim.

Regarding
David’s fraudulent concealment claim, we agree with Sharon that fraudulent
concealment is an affirmative defense to statutes of limitations and that it is
not an independent cause of action.[17]  Thus, to the extent
that David attempted to assert a cause of action for fraudulent concealment,
the trial court did not err by granting summary judgment on the claim.

As
we have stated, limitations generally begins to run when the cause of action
accrues, and the cause of action accrues “when a wrongful act causes some legal
injury.”[18]  But accrual of the
cause of action is deferred in two types of cases.  In one type of case, “‘the
nature of the injury incurred is inherently undiscoverable and the evidence of
injury is objectively verifiable.’”[19]  In these types of
cases, as we have noted, the discovery rule applies.  The other type of case in
which the accrual of the claim is deferred is when the case involves fraud or
fraudulent concealment.  The cause of action is deferred in those cases (and
thus limitations does not begin to run at the time of the legal injury)
“because a person cannot be permitted to avoid liability for his actions by
deceitfully concealing wrongdoing until limitations has run.”[20]
 But “[f]raudulent concealment will not . . . bar limitations when the
plaintiff discovers the wrong or could have discovered it through the exercise
of reasonable diligence.”[21]

To
the extent that David’s argument is that the trial court erred by granting
summary judgment because he raised a fact issue on this affirmative defense,[22]
David makes no argument about what evidence he produced below to raise a fact
issue.  Furthermore, the summary judgment evidence showed that Sharon did not
conceal her trespass or conversion and that David could have discovered it (and
did discover it) through the exercise of reasonable diligence.[23] 
Although the extent of David’s loss may not have been known to him at the time
his claim accrued—that is, he may not have known that Sharon had damaged some of
his property and that she would never return other property—the fact that she
had committed trespass and conversion was not concealed from him.  Accordingly,
David failed to raise a fact issue on this affirmative defense, which he was
required to do in order to defeat summary judgment.[24]

Moreover,
this court has held that fraudulent concealment is limited to situations in
which the defendant had a duty of disclosure,[25] and David makes no
argument that Sharon had any duty of disclosure to him, nor does he make any
explanation of what the basis of that duty might be.  We have reviewed David’s
petition and his summary judgment response, and we have found no assertion that
Sharon owed him any duty of disclosure.  We therefore cannot say that the trial
court erred by not denying the summary judgment based on fraudulent disclosure.[26] 
Accordingly, we overrule David’s fourth issue.

Having
overruled all of David’s issues, we affirm the trial court’s judgment.

 

 

 

LEE ANN DAUPHINOT JUSTICE

 

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

MCCOY, J., filed a dissenting opinion.

WALKER, J., concurs without an opinion.

DELIVERED: 
July 5, 2012





 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00266-CV

 

 


 
 
 David Lee Carpenter, Jr.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Sharon K. Carpenter, aka Sharon Kimberly Weise
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM County
Court at Law No. 3 OF Tarrant COUNTY

----------

DISSENTING
MEMORANDUM OPINION[27]

----------

I
respectfully dissent.  “At common law, the term ‘fraud’ means an act, omission,
or concealment in breach of a legal duty, trust, or confidence justly imposed,
when the breach causes injury to another or the taking of an undue and
unconscientious advantage.  Common-law fraud includes both actual and
constructive fraud.”  Cotten v. Weatherford Bancshares, Inc., 187 S.W.3d
687, 702 (Tex. App.—Fort Worth 2006, pet. denied).  “The elements of actual
fraud are: (1) a false, material representation was made, (2) that was either
known to be false when made or was made without knowledge of its truth, (3) that
was intended to be acted upon, (4) that was relied upon, and (5) that caused
injury.”  Id. at 703.

I
would hold that the events as recounted in the majority’s opinion have raised a
fact question as to the issue of fraud.

Fraudulent
concealment tolls limitations because a person cannot be permitted to avoid
liability for her actions by deceitfully concealing wrongdoing until
limitations has run.  Shell Oil Co. v. Ross, 356 S.W.3d 924, 927 (Tex.
2011).  To prove fraudulent concealment, a party must show that the concealing
party had knowledge of the wrongdoing, had a fixed purpose to conceal the
wrong, and did in fact conceal the wrong from the complaining party.  Dernick
Res. Inc. v. Wilstein, 312 S.W.3d 864, 878 (Tex. App.—Houston [1st Dist.]
2009, no pet.).

I
would likewise hold that a fact question exists as to the applicability of
fraudulent concealment to one or more of David’s causes of action.

Therefore,
I would remand this case to the trial court for further proceedings.

 

 

BOB MCCOY

JUSTICE

 

 

DELIVERED:  July 5, 2012









[1]See Tex. R. App. P. 47.4.





[2]Exxon Corp. v. Emerald
Oil & Gas Co., L.C., 348 S.W.3d 194, 202 (Tex. 2011).





[3]S.V. v. R.V., 933
S.W.2d 1, 4 (Tex. 1996); see also Barker v. Eckman, 213 S.W.3d 306, 311
(Tex. 2006) (stating that a cause of action accrues “when a party has been
injured by actions or omissions of another” and that “[l]imitations begins to
run upon accrual of the cause of action”); Poag v. Flories, 317 S.W.3d
820, 826 (Tex. App.—Fort Worth 2010, pet. denied) (stating that limitations
begin to run “when a wrongful act causes a legal injury”).





[4]See Barker, 213
S.W.3d at 311.





[5]Augillard v. Madura,
257 S.W.3d 494, 500 (Tex. App.—Austin 2008, no pet.).





[6]McVea v. Verkins,
587 S.W.2d 526, 531 (Tex. Civ. App.—Corpus Christi 1979, no pet.).





[7]Rogers v. Ricane Enters.,
Inc., 930 S.W.2d 157, 166 (Tex. App.—Amarillo 1996, writ denied).





[8]Poag, 317 S.W.3d at
826 (citations omitted).





[9]Stidham v. Lewis,
23 S.W.2d 851, 852 (Tex. Civ. App.—Fort Worth 1929, no writ); see also Am.
Sur. Co. of N.Y. v. Hill Cnty., 254 S.W. 241, 246 (Tex. Civ. App.—Dallas
1923) (noting that a wrongful taking of the property from the possession of the
owner, so as to constitute a conversion, can be committed by a destruction of
the property), aff’d, 267 S.W. 265 (Tex. Comm’n App. 1924, judgm’t
adopted).





[10]See Mountain States
Tel. & Tel. Co. v. Vowell Const. Co., 161 Tex. 432, 436, 341 S.W.2d
148, 150 (1960) (noting that “[d]estruction of, or injury to, personal
property, regardless of negligence, may be a trespass”); see also Restatement
(Second) of Torts §§ 216–22 (discussing the tort of trespass to chattel and
providing in § 218 that a person who commits trespass to a chattel is subject
to liability if “the chattel is impaired as to its condition, quality, or
value”).





[11]See Zapata v. Ford
Motor Credit Co., 615 S.W.2d 198, 201 (Tex. 1981) (stating that “[i]f the
wrongful detention [of personal property] seriously interferes with the owner’s
right to control the personalty, there is not only a trespass but a
conversion”); Armstrong v. Benavides, 180 S.W.3d 359, 363 (Tex. App.—Dallas
2005, no pet.) (“A trespass to chattels is a wrongful interference with or
injury to property that causes actual damage to the property or deprives the
owner of its use for a substantial period of time.”).





[12]Id. (“Trespass and
conversion are torts designed to protect against interferences with one’s
possessory interest in personalty.”); Zapata, 615 S.W.2d at 201.





[13]Id.





[14]See id.; Armstrong,
180 S.W.3d at 363.





[15]See Palmer v. Sears,
Roebuck & Co., 969 S.W.2d 582, 584–86 (Tex. App.—Fort Worth 1998, no
pet.) (holding that Appellant’s cause of action for his physical injuries
accrued from the point at which Sears negligently repaired his air conditioner,
not from the much later point at which he realized that his physical illness
could have been caused by the negligent repairs).





[16]See Hodge v. Northern
Trust Bank of Tex. N.A., 54 S.W.3d 518, 522–23 (Tex. App.—Eastland 2001,
pet. denied) (holding that plaintiff could not recast his conversion claim as a
contract claim to avoid limitations).





[17]See Carone v. Retamco
Operating, Inc., 138 S.W.3d 1, 10 (Tex. App.—San Antonio 2004, pet. denied)
(op. on reh’g).





[18]See S. V., 933
S.W.2d at 4.





[19]Id. at 6 (quoting Computer
Assocs. Int’l, Inc. v. Altai, Inc., 918 S.W.2d 453 (Tex.1996)).





[20]Id.





[21]Kerlin v. Sauceda,
263 S.W.3d 920, 925 (Tex. 2008).





[22]See Nichols v. Smith,
507 S.W.2d 518, 521 (Tex. 1974) (noting that once the summary judgment movant
established the defense of limitations as a matter of law, the non-movant had
the burden to come forward with evidence raising a fact issue regarding
fraudulent concealment); see also Bassett v. Am. Nat’l Bank, 145 S.W.3d
692, 696 (Tex. App.—Fort Worth 2004, no pet.) (stating that “[a] defendant
relying on an affirmative defense in opposing a summary judgment must come
forward with summary judgment evidence sufficient to raise an issue of material
fact on each element of the defense”).





[23]See Kerlin, 263
S.W.3d at 925.





[24]See Nichols, 507
S.W.2d at 521.





[25]See Savage v.
Psychiatric Inst. of Bedford, Inc., 965 S.W.2d 745, 753 (Tex. App.—Fort
Worth 1998, pet. denied) (noting the limitation and stating that “[b]ecause of
this requirement, the cases where fraudulent concealment applies are rare, such
as those involving doctor-patient or fiduciary relationships”).





[26]See Nichols, 507
S.W.2d at 521.





[27]See Tex. R. App.
P. 47.4.